IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**TAMMY H. MIZE**                                                                                         **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO. 1:21-cv-00128-JMV**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                      **DEFENDANT**

**FINAL JUDGMENT**

This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of a February 3, 2021, final decision of the Commissioner of the Social Security Administration (the "Commissioner"), finding that Plaintiff was not disabled. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.[1] For the following reasons, the Commissioner's decision is affirmed.

I.      Statement of the Issues

Plaintiff argues on appeal that the Administrative Law Judge ("ALJ"): (1) erred in the RFC assessment; (2) should have adopted the medical opinion of her "treating physician"; (3) did not properly evaluate the side effects of Plaintiff's medications; and (4) improperly refused to include the effects of depression on her RFC. *See* Pl.'s Br. at 1-2.

---

[1] Judicial review under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether substantial evidence in the record supports the Commissioner's decision and (2) whether the decision comports with proper legal standards. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389(1971)). "It is more than a mere scintilla, and less than a preponderance." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990)). "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citations omitted). The court must be careful not to "reweigh the evidence or substitute . . . [its] judgment" for that of the ALJ, *see Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

II.      Statement of the Case

On September 4, 2019, the Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. In her application, the Plaintiff alleged disability beginning on January 24, 2019. The claim was initially denied on February 11, 2020, and upon reconsideration on March 27, 2020. Thereafter, the Plaintiff filed a written request for hearing on June 23, 2020. On December 10, 2020, the Plaintiff held a telephone hearing due to the Covid-19. The Plaintiff appeared and testified at the telephonic conference. Also attending and testifying was William R. Harpool, a vocational expert. On February 3, 2021, the ALJ issued her decision denying the Plaintiff disability or disability insurance benefits, and specifically finding that the Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567 (a) except she should never climb ladders, ropes or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stair; additionally, she should avoid more than occasional exposure to pulmonary irritants including fumes, odors, dusts, gases, poor ventilation and open chemical containers. At step four, the ALJ determined that Plaintiff could perform her past relevant work as a customer service representative and cashier, as these positions are generally performed. *See* Tr. at 26. Thus, the ALJ concluded that Plaintiff was not disabled since January 24, 2019, the alleged onset date, through the February 3, 2021, ALJ decision. *Id.* at 27. On June 15, 2021, the Appeals Council denied Plaintiff's request for review *Id.* at 1-7. Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

III.      Standard of Review

Judicial review of the Commissioner's final decision is limited to two inquiries: (1) whether substantial evidence supports the decision; (2) and whether the Commissioner used proper legal standards in evaluating the evidence. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The Commissioner's factual findings shall be conclusive if substantial evidence supports them. 42 U.S.C. § 405(g). Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotations omitted). "Because the Commissioner is responsible for weighing the evidence, resolving conflicts and making independent findings of fact . . . [the] Court may not decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the Commissioner." *Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000) (citations omitted).

      a. <u>The ALJ Properly Assessed Plaintiff's RFC</u>

The determination of RFC is an administrative assessment based on the totality of the evidence of the extent to which a claimant's impairments and related symptoms affect her capacity to perform work-related activities. 20 C.F.R. § 404.1545. The ALJ based her RFC determination on the credible medical, testimonial, and documentary evidence of record. Tr. at 21-26. *See Hollis v. Bowen*, 837 F.2d 1378, 1386 (5th Cir. 1988) (when determining RFC, ALJ considers descriptions of physicians, the claimant, and the claimant's overall credibility).

In this case, Plaintiff filed for benefits on September 6, 2019, which was well after March 27, 2017, thus the ALJ properly applied the regulations for evaluating medical evidence pertaining to applications filed on or after March 27, 2017. These regulations differ from the regulations pertaining to applications filed prior to March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).

The regulations governing claims filed on or after March 27, 2017, revise the definition of "medical opinion". Now, statements by a medical source reflecting judgments about a claimant's

diagnosis and prognosis are not considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations. 20 C.F.R. § 404.1513(a)(2), (3) (2017); see 81 FED. REG. at 62, 562. For claims filed on or after March 27, 2017, the regulations contain this definition of medical opinion:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . . (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions …. By contrast, the prior regulations and the regulations that apply to claims filed before March 27, 2017, provide that statements from an acceptable medical source that reflect judgments about the nature and severity of a claimant's impairment(s), including the claimant's symptoms, diagnosis, and prognosis, are considered "medical opinions." 20 C.F.R. § 404.1527(a)(2) (2016); id. at § 404.1527(a)(1) (2017); (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2) (2017).

In addition to the changed definition of medical opinion, the regulations also no longer use the term "treating source;" instead, they use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. See 20 C.F.R. § 404.1520c (2017). And the "treating source rule" no longer applies to require deference to treating source opinion evidence. 82 FED. REG. at 5853. In evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a) (2017). Furthermore, while the agency adjudicator – in this

case the ALJ – must articulate her consideration of all medical opinions, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must "give good reasons" for the weight given a treating source opinion). Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) using the following five factors: "(1) Supportability; (2) Consistency; (3) Relationship with the claimant (which includes) (i) Length of the treatment relationship (ii) Frequency of examinations (iii) Purpose of the treatment relationship (iv) Extent of the treatment relationship (v) Examining relationship; (4) Specialization; (5) Other factors." 20 C.F.R. § 404.1520c(a)-(c) (2017).

The ALJ will explain how he considered the factors of supportability and consistency in determining the persuasiveness of a medical source's medical opinion or a prior administrative medical finding. *See* 20 C.F.R. § 404.1520c(b)(2) (2017). The ALJ must explain in her decision how persuasive she finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. *Id.* The ALJ may, but is not required to, explain how he considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. *See* 20 C.F.R. § 404.1520c(b)(3) (2017).

In this case, Plaintiff claims that she was incapable of performing even sedentary work, citing Social Security Ruling (SSR) 83-10 and 20 C.F.R. § 404.1567(b), which state that in order to perform a full range of sedentary work, one must have the capability for prolonged sitting, that is, approximately six out of eight hours in a day. *See* Pl.'s Br. at 4. Plaintiff asserts that she had

severe limitations on sitting and standing due to chronic back pain and chronic pain syndrome. *Id.* at 5.

The ALJ properly considered two consultative examination reports when finding Plaintiff capable of a reduced level of sedentary work without any restriction on sitting. Tr. at 21. During a December 28, 2019, consultative examination performed by Chadwick Mayes, M.D., Plaintiff reported typical daily activities consisting of doing housework, doing laundry, using the internet, and caring for pets. *Id.* at 465-71. Based on this examination, the diagnosis was obesity. *Id.* at 470. Contrary to Plaintiff's argument that she has severe limitations sitting, Dr. Mayes opined that "claimant has no limitations with sitting." *Id.* at 471.

In another consultative examination on January 31, 2020, Steven C. Brandon, M.D., noted Plaintiff was morbidly obese. *Id.* at 480. However, it was determined that her cardiovascular status was unremarkable in this exam. An electrocardiogram (EKG) performed on the date of the examination showed overall low voltage and non-specific ST-T wave changes. *Id.* at 482. In addition, pulmonary function testing performed at that time resulted in a pre-forced vital capacity (FVC) of 4.83L or 136 percent of predicted and a pre-force expiratory volume during the first second (FEV1) of 4.21 or 152 percent of predicted, and spirometry was within normal limits. *Id.* at 481. Likewise, Plaintiff indicated on March 30, 2017, that her back pain improved and was manageable with weight loss of 80 pounds. *Id.* at 342. Nurse Practitioner Betsy Mann noted that Plaintiff was "able to participate in ADL's such as feeding the horses, cooking supper," and that she "recently purchased a treadmill and is looking forward to starting to exercise." *Id.* at 342. Similarly, despite claims that Plaintiff was unable to perform even a reduced range of sedentary work, the record consistently showed that Plaintiff demonstrated a normal gait upon examination. *Id.* at 266, 273, 280, 291, 296, 308, 325, 331, 339, 345, 352, 358, 376, 384, 393, 398, 403, 469,

476. The mere presence of an impairment is not sufficient. *See Johnson v. Sullivan*, 894 F.2d 683, 685 (5th Cir. 1990) (diagnosis alone is insufficient proof of a disability and is merely part of the evidence the ALJ had to consider). Plaintiff must show that she was so functionally impaired that she was precluded from engaging in any substantial gainful activity. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). She has not done so.

Here, the Plaintiff also incorrectly states the applicable law for considering medical opinions as regards to nurse practitioner Betsy Mann. First, as noted above, the new rules for considering medical evidence have eliminated any presumption of persuasiveness or "weight" related to "treating" physicians. Under the new regulations, the Administration revised the procedures and standards for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 82 FED. REG. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. 20 C.F.R. § 404.1520c(b)(2).

Second, the Commissioner also notes that issues reserved to the Commissioner include whether or not an individual is disabled and the ultimate RFC determination. *See* 20 C.F.R. § 404.1527(e)(1)(2). Nurse Practitioner Mann infringed on an issue reserved to the Commissioner in her June 3, 2020, letter, in which she stated that "Tammy Mize is completely and totally disabled from any and all gainful employment which exists in the national economy. It is my opinion that she has been so disabled since 2018." *Id.* at 57. Medical opinions on issues reserved to the Commissioner are not entitled to "any special significance." *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); 20 C.F.R. § 404.1527(d)(3). Thus, the ALJ properly found that Nurse

Practitioner Mann's "opinion is not persuasive, as it is not supported by the objective and clinical evidence, even that in Nurse Mann's own treatment notes.

### b. The ALJ Considered the Alleged Side Effects of Plaintiff's Medications

Plaintiff's argument that the ALJ failed to consider the side effects of her medications is contrary to the record. *See* Pl.'s Br. at 1-2. To show that the ALJ's alleged failure to address side effects of medication breached her duty to develop the record, Plaintiff must show that she was prejudiced. *See Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). Plaintiff is unable to demonstrate limitations due to alleged medication side effects.

Here, the ALJ acknowledged that she considered the "residual symptoms of mental disorders, pain and side effects of medications." Tr. at 25. However, the record shows that in her initial application for benefits, Plaintiff listed all of her medications, including Albuterol, Astorvastin, Furosemide, Levothyroxine, Prozac, Spiriva, spironolactone, Symbicort, and Victoza, but indicated her side effects as either "none" or "none at this time." *Id.* at 218. She later listed a number of other medications and treatments and listed her side effects as "none," with no response to the issue of any side effects from her C-PAP machine. *Id.* at 231. Also, November 30, 2016, records show she was taking her hypertension medications without side effects. *Id.* at 349. Additionally, records dated August 25, 2018, September 27, 2017, and June 28, 2017, show that Plaintiff was taking her diabetic medications "without side effects." *Id.* at 276, 321, 336.

On September 7, 2017, Plaintiff wanted to discuss changing Percocet to some other medication. *Id.* at 327. Her Percocet was decreased to one pill per day. *Id.* at 331. On February 21, 2018, Plaintiff reported being functional when taking one Percocet in the morning for chronic back pain. *Id.* at 288. Regarding her pain medications, during a March 2, 2018, examination, Plaintiff indicated that she has taken Aleve for pain and improvement of function in the past. During the

evaluation, Plaintiff expressed "wishes to decrease pain medications and has been gradually tappering her pain medications." *Id.* at 282. These March 2, 2018, records show that Plaintiff's pain was "partially controlled by current medication. Patient has tried OTC medications such as Tylenol and Ibuprofen without relief." *Id.*

Plaintiff's failure to report significant and limiting side effects is properly interpreted as bearing upon the existence and extent of side effects. *See Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988). In the absence of any supporting evidence that side effects were present, Plaintiff cannot show that she was prejudiced by the ALJ's omission of a specific finding addressing limitations due to her medications. *Cf. Jack v. Astrue*, 426 F. App'x 243, 245 (5th Cir. 2011) (court affirmed, finding that the "medical evidence contains no mention of any complaints by Mr. Jack about the side effects of his medication"); *Marlow v. Barnhart*, 161 F. App'x 346, 348 (5th Cir. 2005) (court affirmed, finding that the claimant "failed to produce objective medical evidence to support his subjective complaints regarding the side effects of his treatment"); *Williams v. Barnhart*, 31 F. App'x 833 (5th Cir. 2002) (court affirmed, finding that the claimant "failed to produce objective medical evidence to support her subjective complaints regarding the side effects of her pain medication").

    c.    <u>The ALJ Properly Declined to Include Mental Limitations in the RFC</u>

The ALJ properly did not include mental limitations in the RFC because she determined that Plaintiff's medically determinable mental impairments of depression and anxiety, "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore not severe." *Id.* at 19. Plaintiff's argument to the contrary is without merit.

The ALJ acknowledged that the medical evidence shows that primary care records reflect a history of treatment for depression and anxiety since at least 2015. *Id.* at 19. In a December 7, 2017, evaluation, Plaintiff requested a higher dosage of Prozac, but had reported good results on Prozac. *Id.* at 299. March 2, 2018, records show that Plaintiff denied depression or anxiety. *Id.* at 282. However, treatment notes from August 25, 2018, reflect a request to increase her Prozac due to increased depression and anxiety symptoms, including lack of energy, feeling anxious, irritable, and stressed. *Id.* at 276, 279. In an office encounter at on January 7, 2019, before Nurse Practitioner Mann, Plaintiff stated that she had not felt "down, depressed or hopeless," and over the past two weeks had "not felt a lack of interest or pleasure in doing things." *Id.* at 263. Records dated November 20, 2018 show a request to refill her Prozac. *Id.* at 269. Plaintiff again stated that she had not felt "down, depressed or hopeless," and over the past two weeks had "not felt a lack of interest or pleasure in doing things." *Id.* Plaintiff had previously noted an identical lack of mental limitations on September 28, 2016. *Id.* at 355.

Moreover, during a consultative examination on December 28, 2019, she was alert, had good eye contact and fluent speech, her mood was appropriate, thought process were clear, memory was normal, concentration was good, and she was oriented to time, place, person and situation. *Id.* at 468-69. She reported during a January 31, 2020, consultative examination that medication seemed to help her depression, and it was determined that her gross mental functioning was appropriate. *Id.* at 473, 477. Plaintiff has not demonstrated any significant mental limitations. *See Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999) (the plaintiff has the burden of proof through step four of the sequential evaluation process).

The RFC assessment it is an administrative assessment based on both medical and non-medical evidence. 20 C.F.R. § 404.1545. The ALJ's decision properly reflects a determination of

the degree to which Plaintiff's evidence, including any medical opinions of record, was supportable and consistent with the other evidence of record. Plaintiff has shown no legal error in the ALJ's consideration of the mental treatment records and opinions to determine Plaintiff's RFC.

## Conclusion

For the foregoing reasons, the Commissioner's decision is affirmed.

**SO ORDERED**, this the 26th day of May, 2022.

*/s/* Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**